Good morning, Your Honors. May it please the Court, my name is Brian Bush and along with my colleague, Mr. Steven Weatherhead, we represent the appellate and the defendant, Mr. Timothy Day, in this matter. This case involves the enforcement of a non-solicitation provision in an employment contract. The issue on appeal is whether the lower district court erred in applying a Delaware choice of law provision to the employment contract or was required to analyze the restrictive covenants under the more stringent requirements mandated by the Commonwealth of Massachusetts. Briefly, Your Honor, NuVasive hired my client, Mr. Day, as a direct employee selling spinal products and presented him with its standard employment agreement called the PIIA, which was signed and effective January 6th of 2018. The PIIA was signed and performed in Massachusetts. It contained a one-year post-termination restrictive covenant agreement, including both non-solicitation and non-compete clauses. It also contained a Delaware choice of law provision. In January of 2019, the PIIA was transitioned by agreement of the parties into an exclusive distributorship relationship between NuVasive and Mr. Day. This transition involved new roles, new responsibilities, changes in compensation structure, changes in taxation, and changes in legal status from an employee to an independent contractor. The exclusive distributorship agreement was signed by NuVasive and also through a single member single purpose LLC that my client, Mr. Day, had formed called Rival Medical. On March 30th, Mr. Day terminated the sales representative agreement and went to work as an employee for a competitive company. In April of that same year, NuVasive sued Mr. Day for breach of the PIIA agreement seeking an injunction under the non-solicitation provision. Applying Delaware law to the restrictive covenants, the lower court granted the injunction against Mr. Day, rejecting his argument for application of Massachusetts law. In reaching its decision, the lower court did not properly analyze whether Massachusetts, the state with the greater interest in this matter, had public policy interests in protecting its citizens' substantive employment rights. The lower court opined that the public policy issue was unclear and merited further discussion. It is the lower court's choice of law analysis that Mr. Day contends is flawed and should be reversed on this de novo appeal. The legal standard for deciding which law to apply is articulated by the restatement on conflict of laws and adopted by the Massachusetts Supreme Court in the Oxford case. I don't want to cut you off from making points you want to make, but on the material change argument, by your own account, the change consisted of a shift from an employment relationship to an independent contractor relationship. That is correct, Your Honor. Your opponent's contention is that that disqualifies your ability to make the material change argument because it wasn't a change within the employment relationship. What's your answer to that? Yes, Your Honor, and I think that's a misreading of the material change doctrine. The material change doctrine, as articulated by the Bartlett Tree Company case in 1968, deals with the relationship between the two parties. It doesn't mean the employment relationship. It is the employment relationship. Do you have any case in which the change takes the form of a shift from an employment relationship to a non-employment relationship? Well, I don't know that I would call it a non-employment relationship. Well, it's not an employment relationship. Well, it's still an independent contractor relationship. Not an employment relationship. It's an independent contractor relationship. Do you have any case in which the change resulted in a change in the status of the person to no longer be an employee? No, Your Honor. Okay. There's no case in Massachusetts with that direct factual pattern, but I think that in looking at the material change doctrine, the key language that the courts look at is the relationship between the parties, whether or not the relationship has been substantially changed or modified in any way. And it's our contention that a reading of the material change doctrine to limit it only to the employee context and not something broader or in more depth than that would be an incorrect reading and analysis of that doctrine. You'd agree that termination wouldn't be a material change? That termination would not be a material change? The termination is certainly not a material change. Yes, I would agree with that. In reviewing the material change doctrine, the cases that address it, courts have consistently held that just because a contract is terminated and the parties continue on in some other form of relationship, typically an employment relationship, doesn't take the material change doctrine off the table. And that's exactly what the Bartlett Treaty Court addressed and looked at from the beginning in 1968. But, Your Honor, before we even get to whether or not the material change doctrine is applicable in this case and whether or not it should be applied or was applied correctly, we first must decide whether or not Massachusetts has any sort of a public policy that would require the court to ignore the Delaware choice of law provision and focus on what Massachusetts says. And it is our position, Your Honor, that Massachusetts does have such public policy as outlined by the Massachusetts Supreme Court in the Beacon Hill case. Now, whether or not something, a doctrine or a legal principle becomes a public policy has been the topic of debate. And there is no magic bullet that turns an affirmative defense or a principle from a legal defense into an articulated public policy. But we believe that the Beacon Hill court gave us the roadmap for how we get there. And that court says that the public policy is based on a court's conviction, grounded in legislation and precedent, that denying enforcement of a contractual term is necessary to protect some aspect of the public welfare. And here, Your Honor, we have both a broad public policy and concern for protecting employment rights, as articulated by Massachusetts in many of its legislative acts, including the new Non-Competition Agreement Act. And then we had a more specific public policy related to the material change doctrine, which the court gave a cursory review to and ultimately decided that Massachusetts law did not apply and analyzed the contract under Delaware law. And we contend that that was the error and that the case should be remanded back to the lower court for analysis, a detailed analysis, under Massachusetts law. Just on a material change point, so I can understand it, if a company just reclassifies an employee, the material change doctrine kicks in, right, to protect? I think it would have to be more than just a reclassification. I mean, the doctrine itself, material change, there must be some material difference in the classification, whether it's comp, territory. And the effect of that is what? Just help me, just so I get it. On your account. So the effect of that is if there is a material change from one classification to another, the courts have said that there needs to be an accompanying new employment arrangement with new restrictive covenants that are negotiated at that point in time. And the court is not going to just simply apply the old restrictive covenants to the new employment relationship. But if we just fire the employee, the material change doctrine does not kick in, right? It would not apply at all, Your Honor. Exactly. Because there's no continuation. So we've got sort of a middle case. That's the point here, right? Because the person is no longer working for them as not an employment resident, but he has some relationship with that company. That's correct, Your Honor. So what am I supposed to do with that, given the claim that you're making depends on there being some very strong public policy. And you're asking for, in effect, an extension of a Massachusetts doctrine to cover a case that there's no precedent in Massachusetts to cover. Well, I don't know that I would classify it as an extension. I think that the key term that the courts, when analyzing this, have used is relationship. Is there any state that applies this doctrine? Is there any authority in the country that would apply any like doctrine to a situation like this one? I am not aware of any other state that has the material change doctrine. I know that Delaware does not have it. But I haven't done an exhaustive look on all 50 states. Thank you, Your Honor. May it please the Court. Mary Taylor Gallagher and Michael Batson on behalf of the Apley Plaintiff and Evasive. The district court did not err when it applied Delaware law in preliminarily enjoining the defendant from continuing to violate his post-employment non-solicitation obligations. The court applied because the agreement between the parties had a choice of law provision under the Restatement Second and under Oxford. Could you talk about the material change doctrine? Yes, Your Honor. Publicability here. Yes, Your Honor. First, for the material change doctrine to have any import in the analysis here would go to the second tier of that restatement analysis where the court would have to determine that the material change doctrine represented a fundamental public policy of a state with a materially greater interest in this case. And here it does not. The only Massachusetts cases that have applied the material change doctrine are superior court cases, and there is no consistency in their application. There is no appellate court case. There is no supreme judicial court case that applies the material change doctrine. Judge Behr has been trying to get at whether it is applicable to this case, period. It is not applicable to this case for several reasons. One, because the employment relationship between defendant and plaintiff terminated in January of 2019. Subsequent to that employment relationship terminating, an invasive and rival medical LLC entered into a sales agreement. Mr. Day, by his own declaration to the district court, says he was an employee of rival medical, and he even characterizes it in his brief as, at least his brief to the district court, that his employment relationship terminated. So that is an entirely different relationship. The employment agreement between invasives... The thing that I am wondering is how to think about... We sometimes have cases that come to us where a company will reclassify employees as independent contractors, right, to avoid, let's say, state wage and hour law obligations. Taxes. Correct. All kinds of things like that. It just seems, given that such an evident reality of the workplace that that type of reclassification happens, it is not obvious to me that it makes sense to think of the material change doctrine as being limited only to reclassifications within the employment relationship, rather than a reclassification that keeps you, in many ways, in the identical relationship, functionally, that you previously had as a sales rep, but you now have a formal relationship that meets the independent contractor test. Do you see that? I do, Your Honor. And, in fact, Your Honor is correct that there are no cases that have looked at this issue where the employment terminates, and in the parties there is some other type of arrangement. In the industry that we are talking about here, the medical device industry, it is not unusual for the actual manufacturer to contract with distributors, and distributors then hire their own sales associates and operate as a separate company or entity. That's what happened here. Defendant wanted to transition out of being an employee of Nuvasiv, wanted to have his own independent distributorship. His employment with Nuvasiv terminated. Nuvasiv and Rival Medical then entered into a distributorship sales agreement. And Mr. Day said that he was an employee of, an actual employee of Rival Medical. Is there anything that would have legally prevented you from entering into a non-compete, non-solicitation with the new entity? The entity itself, yes. And as part of the sales agreement between Rival Medical and Nuvasiv, yes, the sales associates are to sign compliance agreements. Mr. Day, the defendant terminated Rival Medical's relationship with Nuvasiv prior to ever signing a compliance agreement. In fact, Your Honors, we don't even need to get to the question on termination. It is an interesting question, but we don't even have to get to that question because the Superior Court of Massachusetts has said that parties can contract around the material change doctrine. And in fact, the District Court noted that in its opinion that the agreement between the parties actually contains a provision that states, I understand and agree that any subsequent change or changes in my duties, salary, or scope of this agreement, so even if we were to say that somehow it was a continuation, that the formation of Rival Medical as an independent LLC was somehow a continuation of defendant's employment, then this clause in the employment agreement contracts around the material change doctrine. That's been recognized by the Superior Court in ARS Services, Inc. And that was argued to the District Court here? Yes, Your Honor. I believe so. I know the District Court, at least in the District Court's opinion, noted that on page 8 of the memorandum in order noted that the employment agreement contained a clause that said it would continue on even if there were changes in the terms of employment or conditions of employment. So we've got those two reasons that the material change doctrine would not apply here. But beyond that, given that the Superior Court in Massachusetts has said that parties can contract around the material change doctrine, it really cuts against the argument that the material change doctrine represents a fundamental public policy of the Commonwealth such that the District Court is required under that second tier analysis to look to Massachusetts law to determine whether it has a material or greater interest. We simply don't get there. And in fact, and this hasn't really been addressed yet, but on the non-compete act, it's the same issue there. It does not represent a fundamental public policy of the Commonwealth. And in fact, in a case that the Supreme Judicial Court decided two weeks ago on January 14th that the Supreme Judicial Court actually enforced a pre-act non-compete. And I've actually got copies of that case, if Your Honor would like that. We did not sign it in our brief because it was just decided two weeks ago. But it is, the site to that is Auto Mile Holdings LLC v. McGovern, 483 Mass 797. And in footnote 15 of that case, the Supreme Judicial Court said in applying or in enforcing a pre-act non-compete noted that subsequent to the events at issue in this litigation, the legislature passed the Massachusetts Non-Compete Agreement Act, which sets out requirements for an employee non-compete agreement to be valid and enforceable. The legislation applies only to employee non-compete agreements entered into on or after October 1st, 2018. It does not, the legislation does not apply to non-solicitation agreements. So there's two important notes in this footnote. One, that the Non-Compete Act is not retroactive. It only applies to agreements signed after October 1st, 2018. And that it does not apply to non-solicitation agreements. So respectfully, defendants' argument that the Non-Compete Act represents a fundamental public policy of the Commonwealth is simply not applicable here. So that leaves us with the material change doctrine. And again, there are no cases in Massachusetts that state that the material change doctrine represents a fundamental public policy. Barring it being a fundamental public policy, then the court was correct in applying Delaware law because it passes the first tier of the analysis. There's a substantial relationship between the parties in Delaware, because Delaware is the state of incorporation. And also that there was a reasonable basis for choosing that law because Delaware has a well-established body of contract law. And then second, Delaware law is appropriate and should be honored as the party's choice of law because it does not violate the fundamental public policy of the Commonwealth. And even if it did, even if there was even a question about whether the material change doctrine represented a fundamental public policy, we know that Massachusetts Superior Courts have enforced non-compete agreements where the agreement itself expressly contracted around the material change doctrine. We've got that here. And we also can look at that and say if it's a fundamental public policy, then the parties would not be allowed to contract around it. And that is not what the Superior Court has held. Thank you. Thank you. Thank you all.